CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
10/23/2019
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MERLE BROOK STEPHENS, )<br>)<br>Defendant. ) | Criminal Action No. 5:18-cr-00038<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on defendant Merle Brook Stephens' motion to suppress. Incident to Stephens' arrest on December 7, 2018, law enforcement officers conducted a search of two bags Stephens had with him and discovered cash, a firearm, and methamphetamine. Stephens now moves to suppress the evidence obtained during that search.[1] (Mot. to Suppress, Dkt. No. 40; Pro Se Mot. to Suppress, Dkt. No. 79.) The court held a hearing on Stephens' motion and provided the parties additional time to file supplemental briefs. Having reviewed the evidence from the hearing and the parties' briefs, the court will deny Stephens' motion.

I. BACKGROUND

Prior to Stephens' arrest, a cooperating defendant in another criminal case informed law enforcement officers that Stephens supplied her with methamphetamine to distribute. (Hr'g Tr. 15, Dkt. No. 78.) The cooperating defendant contacted Stephens and provided his location—a motel in Mt. Jackson, Virginia—to law enforcement officers. (*Id.*) She further advised officers that

---

[1] Stephens further seeks to suppress statements he made after detention but before he was informed of his rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966). However, the evidence presented at the hearing on this motion shows that Stephens was advised of his rights several times by different officers. (Hr'g Tr. 22; *see also id.* at 45 ("I asked him if he had been read his Miranda rights out on the scene at the hotel. He said he thought so. I asked him who read him his rights. Asked him if he was an ATF agent or local detective. He told me he thought it was a local detective."); *id.* at 45–49 (noting that another ATF officer, Special Agent Frenald, also advised Stephens of his rights prior to interviewing Stephens).) Among the evidence presented was also a recording of Stephens acknowledging to officers that he had been advised of his rights. Counsel for Stephens noted at the hearing that he had not previously heard the evidence and stated that he was "not going to argue it any further." (*Id.* at 64.) Regardless, it is clear Stephens was advised of his rights, and thus the court will deny his motion to suppress the statements he made to law enforcement officers.

Stephens "possibly" had methamphetamine "in a bag." (*Id.* at 20.) Based on that information, officers from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) set up surveillance at the motel and ultimately took Stephens into custody. (*Id.* at 19, 40–41.) Although the officers were surveilling Stephens for his possible involvement in drug trafficking, the basis of the arrest was a state arrest warrant "for child support." (*Id.* at 55–56.)

Investigator Springer with the Shenandoah County Sheriff's Office testified that when he arrived at the motel, he observed Stephens "secured in handcuffs behind his back while sitting" on the back of a pickup truck. (*Id.* at 20.) One of the bags at issue sat next to Stephens in the back of the truck, and another sat on the ground beside the truck. (*See id.* at 23–24 (noting the second bag was between the truck and an SUV that was parked in the parking space immediately next to the truck).) The parties dispute whether one or both of the bags were locked, but the testimony at the hearing indicated that only the bag located on the ground next to the truck was locked. (*Id.* at 25–26.)

Investigator Springer testified that when he arrived, he advised Stephens of his *Miranda* rights. (*Id.* at 22.) He then searched the unlocked bag located in the back of the truck. That bag contained a firearm, magazines for the firearm that were loaded with ammunition, money, and personal items. (*Id.* at 24–25.) The second bag, originally located on the ground next to the truck, was then moved into the bed of the pickup truck. Investigator Springer testified that he used "keys that came off of Mr. Stephens' person" to unlock and search the second bag, in which he found "a large amount of narcotics." (*Id.*) Among other things, the bag contained methamphetamine, marijuana, prescription pills, and money.

Since his arrest, Stephens has been charged in a three-count indictment with possession with intent to distribute methamphetamine, use of a firearm during a drug trafficking crime, and

possession of a firearm by a prohibited person.  (Dkt. Nos. 13, 60.)

## II.  DISCUSSION

Stephens moves to suppress the evidence found through the search of the bags conducted during his arrest.  He advances three arguments in his motion: (1) that there was no lawful arrest; (2) that even if the arrest was lawful, the search exceeded the scope of a permissible search incident to a lawful arrest as defined in *Arizona v. Gant*, 556 U.S. 332 (2009); and (3) that the inevitable discovery doctrine should not apply.  Because the evidence is subject to the inevitable discovery doctrine, the court will deny the motion to suppress.

**A.  Stephens' Arrest Was Lawful**

Stephens first argues that he was arrested unlawfully at the motel because the warrant for his arrest for failure to pay child support was never properly served on him.  He notes that the "normal process for serving a warrant include[s] giving a copy of the warrant to the defendant and making a return to the issuing court." (Mem. in Supp. 3, Dkt. No. 71.)  Accordingly, Stephens argues that cases analyzing the "search incident to arrest" exception to the warrant requirement of the Fourth Amendment are inapposite here.

To be sure, Federal Rule of Criminal Procedure 4, which sets the procedure for executing and returning an arrest warrant, requires that if an officer does not possess the warrant at the time of the arrest, the officer "must show the original or a duplicate original warrant to the defendant as soon as possible." Fed. R. Crim. P. 4(c)(3)(A).  However, this court has previously stated that an officer arresting a defendant pursuant to an arrest warrant need not possess the warrant at the time of the arrest. *Jackson v. Lewis*, No. 7:02CV01238, 2004 WL 4957041, at *1 (W.D. Va. Apr. 5, 2004).  Moreover, "[a]n arrest is not unlawful due to the mere failure of an arresting officer to serve an arrestee with a copy of the arrest warrant." *Bickley v. U.S. Dept. of Treasury*, No. 7:99-CV-

3

00347, 2000 WL637345, at *6 (W.D. Va. Jan. 19, 2000) (citing *United States v. Turcotte*, 558 F.2d 893, 896 (8th Cir. 1977)).

Special Agent Bockmann of the ATF testified that the basis of Stephens' arrest was the Shenandoah County arrest warrant for failure to pay child support. The subsequent failure of officers to serve Stephens with a copy of the warrant does not make the arrest unlawful.

**B. Search Incident to Arrest**

It is less clear whether the search in this case was a proper search incident to a lawful arrest after the Supreme Court's decision in *Gant*. The government cites to several cases involving facts similar to Stephens' arrest and subsequent search. *See, e.g.*, *United States v. Currence*, 446 F.3d 554 (4th Cir. 2006); *United States v. Clemons*, 72 F.3d 128 (4th Cir. 1995); *United States v. Silva*, 745 F.2d 840 (4th Cir. 1984). However, the Fourth Circuit decided each of these cases before the Supreme Court decided *Gant* in 2009. Since *Gant*, courts have limited searches incident to arrest to situations where a search may "prevent the concealment or destruction of evidence" of the crime of arrest, or to remove weapons that might be used against the arresting officers. *See, e.g.*, *United States v. Seay*, No. 4:17-cr-100, 2018 WL 1629111, at *5 (E.D. Va. Apr. 4, 2018) (quoting *Gant*, 556 U.S. at 339).

Based on the location of the bags and the circumstances surrounding Stephens' arrest, it is questionable whether the officers had reason to search the bags at issue. However, the court need not resolve this issue because the evidence would inevitably have been discovered by officers subsequent to Stephens' arrest.

**C. The Inevitable Discovery Doctrine Applies**

"The inevitable discovery doctrine may apply where additional routine or factually established investigative steps would inevitably lead to discovery of the evidence without

4

undertaking any search." *United States v. Allen*, 159 F.3d 832, 841 (4th Cir. 1998) (citing *Nix v. Williams*, 467 U.S. 431 (1984)). Stephens argues that the Fourth Circuit's decision in *Allen* supports his position that "[t]he inevitable discovery doctrine cannot rescue evidence obtained via an unlawful search simply because probable cause existed to obtain a warrant when the government presents *no* evidence that the police would have obtained a warrant." *Id.* at 842. In so arguing, he takes the Fourth Circuit's decision out of context. *Allen* further stated that the doctrine allows the government to rely on "information obtained by unlawful means . . . '[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" *Id.* at 838 (quoting *Nix*, 467 U.S. at 444). "'Lawful means' includes an inevitable search falling within an exception to the warrant requirement, such as an inventory search . . . ." *Seay*, 2018 WL 1629111, at *6 (citing *Allen*, 159 F.3d at 841); *see also United States v. George*, 971 F.2d 1113, 1121 (4th Cir. 1992) (finding that after a lawful arrest, officers could either execute a search warrant for the defendant's vehicle or, "even in the absence of the search warrant, the police could have conducted a routine inventory search, during which the [evidence] might have been discovered").

Both Investigator Springer and Special Agent Bockmann testified that their respective law enforcement agencies have policies in place to conduct inventory searches for items seized during an arrest and that Stephens' bags would have been searched under either policy. (*See* Hr'g Tr. 30–31 ("[W]hen someone is taken into custody, any content they have in their person is documented. It's taught to all new officers and it's common practice throughout [the Shenandoah County Sheriff's Office]."); *id.* at 57–58 ("Anything that [ATF] take[s] into our possession we need to inventory it before we put it into evidence and put it into our holding facility, just because of the nature of what we do.").) The evidence indicates that Investigator Springer initially took custody of

5

the bag but transferred the bag to Special Agent Bockmann when the ATF took over the investigation. Regardless of whether the search incident to arrest was lawful under *Gant*, officers of either the Sheriff's Office or ATF would have inevitably engaged in an inventory search and discovered the firearm, ammunition, money, and narcotics. Accordingly, the court will deny Stephens' motion to suppress evidence obtained through the search of his bags.

III. CONCLUSION

For the reasons state above, it is hereby ORDERED that Merle Brook Stephens' motion to suppress (Dkt. No. 40) and pro se motion to suppress (Dkt. No. 79) are DENIED.

The clerk is directed to send a copy of this order to all counsel of record.

Entered: October 23, 2019.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge